UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2013 DEC 16  A II: 03

DISTRICT COURT

GILBERTO VALENTIN,                    :

                 Plaintiff,           :          CIV. NO. :

v.                                    :

BRIDGEPORT POLICE
DEPARTMENT, et al. JOHN GALE
THOMAS LATTANZIO, JAMES HONIS (Deputy Chief)
JOSEPH GAUDETTE (Chief) Defendants. P4   :       DECEMBER 16, 2013

## NOTICE OF REMOVAL

To the Honorable Judges of the United States District Court for the District
of Connecticut.

The removing parties, the Bridgeport Police Department, Joseph Gaudett,
James Honis, John Gale, and Thomas Lattanzio, by and through the
undersigned attorney, respectfully aver the following:

1.      The removing parties are Defendants in the above referenced
action, which was initiated in the State of Connecticut Superior Court for the
Judicial District of Fairfield at Bridgeport, with a Return Date of December 10,
2013, bearing Docket No. FBT-CV13-6039751-S. A true and accurate copy of
the Summons and Complaint are attached hereto as Exhibit 1.

2.      The Defendants in this case are the Bridgeport Police Department,
Joseph Gaudett, James Honis, John Gale, and Thomas Lattanzio. Exhibit 1.

3.      The plaintiff's Complaint asserts a claim that the Defendants
discriminated against the plaintiff on the basis of race pursuant to 42  U.S.C. §
1983 and 42 U.S.C. § 1981. Exhibit 1, Counts One and Two.

4.     The United States District Court has federal question jurisdiction over the Plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981, and the Plaintiff's Complaint is removable to the United States District Court pursuant to the provisions of 28 U.S.C. § 1331.  The United  States District Court further has supplemental jurisdiction over the plaintiffs' state law claims asserted in Counts Three and Four of the Complaint pursuant to the provisions of 28 U.S.C. § 1367.

WHEREFORE, the removing parties pray that the above referenced action be removed from the State of Connecticut Superior Court to the United States District Court for the District of Connecticut.

THE DEFENDANTS

By:_____

Betsy A. Edwards, Esq.
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT  06604
Tel: #203/576-7647
Fed. Bar #27820

## CERTIFICATION

This is to certify that a copy of the "Notice of Removal" has been sent via

U.S. Mail, postage pre-paid, and electronic mail, on this 16th day of December,

2013, to:

Josephine Smalls Miller, Esq.
914 Main Street, Suite 206
East Hartford, CT 06108

/s/
Betsy A. Edwards

# EXHIBIT A

## SUMMONS - CIVIL

JD-CV-1  Rev. 2-13
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

### STATE OF CONNECTICUT
### SUPERIOR COURT
www.jud.ct.gov

**See page 2 for instructions**

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* | | |
|---|---|---|---|---|
| 1061 Main Street, Bridgeport, CT 06604 | ( 203 )579-6527 | **December** Month | 10 Day | , 2 013 Year |

| ☒ Judicial District | G.A. | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | Number: | **Bridgeport** | Major: **T** | Minor: **90** |

### For the Plaintiff(s) please enter the appearance of:

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Josephine S. Miller  914 Main Street, Suite 206  East Hartford, CT 06108 | 422896 |

| Telephone number *(with area code)* | Signature of Plaintiff *(if self-represented)* |
|---|---|
| ( 203 ) 512-2795 | |

| Number of Plaintiffs:  1 | Number of Defendants:  5 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | Name:  Gilberto Valentin  300 Congress Street  Bridgeport, CT  06604 Address: | P-01 |
| **Additional Plaintiff** | Name: Address: | P-02 |
| **First Defendant** | Name:  Bridgeport Police Department  300 Congress Street  Bridgeport, CT  06604 Address: | D-01 |
| **Additional Defendant** | Name:  Joseph Gaudette  Bridgeport Police Department  300 Congress Street, Bridgeport, CT  06604 Address: | D-02 |
| **Additional Defendant** | Name:  James Honis  Bridgeport Police Department  300 Congress Street, Bridgeport, CT  06604 Address: | D-03 |
| **Additional Defendant** | Name:  John Gale  Bridgeport Police Department  300 Congress Street, Bridgeport, CT  06604 Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left Josephine S. Miller | | Date signed 11/11/2013 |
|---|---|---|---|---|

| If this Summons is signed by a Clerk: | | For Court Use Only |
|---|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | | File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | | Date | |
|---|---|---|---|---|
| Name and address of person recognized to prosecute in the amount of $250 | | | | |
| Signed *(Official taking recognizance; "X" proper box)* | ☐ Commissioner of the Superior Court ☐ Assistant Clerk | Date | Docket Number | |

(Page 1 of 2)

First named Plaintiff *(Last, First, Middle Initial)*

**Valentin, Gilberto**

First named Defendant *(Last, First, Middle Initial)*

**Bridgeport Police Department**

## Additional ~~Plaintiffs~~ Defendant's

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| **Thomas Lattanzio  Bridgeport Police Department  300 Congress Street  Bridgeport, CT  06604** | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |

| | | FOR COURT USE ONLY - File Date |
|---|---|---|
| | 12 | |
| | 13 | |
| | 14 | Docket number |

## State Marshal Eric M. Nikola

P.O. Box 189 Bridgeport, CT 06601

(203) 402-0723

# RETURN OF SERVICE

STATE OF CONNECTICUT

SS: BRIDGEPORT

COUNTY OF FAIRFIELD

In the matter concerning:  GILBERTO VALENITN

Vs.

BRIDGEPORT POLICE DEPARTMENT, JOSEPH GAUDETTE, JAMES HONIS, JOHN GALE and THOMAS LATTANZIO

November 18, 2013

Then and there, by virtue hereof and at the direction of the plaintiff's attorney, I made service of the within and foregoing original Writ, Summons, Continuation of Parties, Complaint, Jury Demand and Statement of Amount in Demand by leaving Two True and Attest Copies with and in the hands of Frances Ortiz, Assistant City Clerk, City of Bridgeport, the person authorized to accept service for the within named defendant, Bridgeport Police Department at 45 Lyon Terrace, Bridgeport, CT 06604, with my doings hereon endorsed.

Then and there, by virtue hereof and at the direction of the plaintiff's attorney, I further made service of the within and foregoing original Writ, Summons, Continuation of Parties, Complaint, Jury Demand and Statement of Amount in Demand by leaving Two True and Attest Copies with and in the hands of Frances Ortiz, Assistant City Clerk, City of Bridgeport, the person authorized to accept service for the within named defendant, Joseph Gaudette at 45 Lyon Terrace, Bridgeport, CT 06604, with my doings hereon endorsed.

Then and there, by virtue hereof and at the direction of the plaintiff's attorney, I further made service of the within and foregoing original Writ, Summons, Continuation of Parties, Complaint, Jury Demand and Statement of Amount in Demand by leaving Two True and Attest Copies with and in the hands of Frances Ortiz, Assistant City Clerk, City of Bridgeport, the person authorized to accept service for the within named defendant, James Honis at 45 Lyon Terrace, Bridgeport, CT 06604, with my doings hereon endorsed.

Then and there, by virtue hereof and at the direction of the plaintiff's attorney, I further made service of the within and foregoing original Writ, Summons, Continuation of Parties, Complaint, Jury Demand and Statement of Amount in Demand by leaving Two True and Attest Copies with and in the hands of Frances Ortiz, Assistant City Clerk, City of Bridgeport, the person authorized to accept service for the within named defendant, John Gale at 45 Lyon Terrace, Bridgeport, CT 06604, with my doings hereon endorsed.

Then and there, by virtue hereof and at the direction of the plaintiff's attorney, I further made service of the within and foregoing original Writ, Summons, Continuation of Parties, Complaint, Jury Demand and Statement of Amount in Demand by leaving Two True and Attest Copies with and in the hands of Frances Ortiz, Assistant City Clerk, City of Bridgeport, the person authorized to accept service for the within named defendant, Thomas Lattanzio at 45 Lyon Terrace, Bridgeport, CT 06604, with my doings hereon endorsed.

Attest

Eric M. Nikola
CT State Marshal
Fairfield County

| Service | $ 70.00 |
| Travel | $ 8.00 |
| Pages | $ 320.00 |
| Copies Made | $ 320.00 |
| Endorsements | $ 6.40 |
| | $ 724.40 |

GILBERTO VALENTIN

v.

BRIDGEPORT POLICE DEPARTMENT,
JOHN GALE, THOMAS LATTANZIO,
JAMES HONIS, (Deputy Chief),
JOSEPH GAUDETTE (Chief)

SUPERIOR COURT

J.D. OF FAIRFIELD

AT BRIDGEPORT

NOVEMBER 11, 2013

## COMPLAINT

1.      The Plaintiff, Gilberto Valentin, is an Hispanic male of Puerto Rican descent.  He is a resident of Bridgeport, CT.  Officer Valentin has been a member of the Bridgeport Police Department since October 30, 1988.  He currently holds the rank of Sergeant and is assigned to the traffic division.  In Traffic Division our assignments include Motor vehicles violation enforcements, such as DUI, seatbelt and cell phone violation. We also provide assistance to the elementary and the High school with a high visability police presence to ensure the safety of students as well as the school staff etc.

2.      The Defendants (a) the Bridgeport Police Department which has offices and a place of business at 300 Congress Street, Bridgeport, CT   06604; (a) Chief Joseph Gaudette; (b) Deputy Chief James Honis; (c) Sergeant John Gale; (d ) Officer Thomas Lattanzio.

3.      From January 8, 2004 Plaintiff was assigned to the Office of Internal Affairs (hereafter referred to as "OIA") as an investigating officer.    The commanding officer at that time was Lieutenant Roderick Porter, now Captain.

4.     During Plaintiff's assignment to OIA he was required to investigate a citizen complaint wherein it was alleged that Officer John Gale had discharged his taser during the arrest of that citizen. OIA Case # 07I-294.

5.     As a consequence of the investigation, Plaintiff made a determination based on facts that Officer Gale had infact discharged his departmental issued taser and failed to document the incident as per the Bridgeport Police Policy and Procedures.

6.     During the investigation John Gale was found to have departed from the truth when he told his Sergeant at the time, Sergeant Robert Magnuson that he did not used his taser.  This determination was reviewed and upheld by Plaintiff's superior, Roderick Porter who concurred with the investigation.

7.     The Connecticut State Police conducted a Board hearing into the matter and they afforded John Gale an opportunity to address the allegation made against him and based on their findings and belief, they found that John Gale was dishonest and was terminated from the position that he had obtained with the Connecticut State Police.

8.     John Gale was permitted to return to work with the Bridgeport Police Department and on December 8, 2009 the Honorable Board of Police Commissiioners held a hearing in their office and as a result John Gale was found to be in violation of deparment rule 11.1A.4 of the Taser policy and one Holiday has been imposed.

9.     Since returning to work at the Bridgeport Police, Officer Gale has taken certain actions to retaliate against Plaintiff.

10.    On May 15, 2008 John Gale filed a Citizen's complaint against plaintiff due to the fact that plaintiff investigated a citizen's complaint that was made against John Gale that was sustained.

11.    On November 18, 2008 Officer John Gale filed a complaint against plaintiff after he learned that Plaintiff was being transferred to the West command on the A-Shift where Officer Gale was assigned.  Plaintiff was transfered on November 17, 2008.

12.    On November 17, 2008 Plaintiff was transfered to the A-Shift (Personnel Order Number P-0461) Signed by Chief Gaudett.

13.    On November 25, 2008 John Gale filed a complained thru Lt. Thomas Luna alleging that while Lt. Lula and the plaintiff were giving row call the Plaintiff stood standing in front of all the officers during row call and stared at him for an extended period of time and at one point nodding his head at him as if trying to elicit a response. Lt. Lula allowed Officer Gale to go home 4 hours early because he claimed a hostile environment.

14.    Lt. Lula never conducted an investigation based on John Gales complaint as per the Bridgeport Police Policy and Procedures and he never questioned plaintiff or asked any of the officers that were present in row call if they had witnessed John Gales claim against plaintiff since he was standing in the front of them facing everyone.

15.    On December 1, 2008 John Gale filed a complaint to Lt. Shuck against plaintiff alleging that this is the 3rd complaint he has made against plaintiff of a Hostile working environment.   Officer Gale alleges he felt the Plaintiff who was his supervisor that evening was after him, so in his written report dated December 1, 2008 Officer Gales

writes, "In feeling like he (Plaintiff) was after something I went to Lt. Shuck advising same and that I was not feeling well, so he sent me home."

16. On January 9, 2009 Plaintiff submitted a report to Chief Guadett Jr. regarding Lt. Shuck failure to take disciplinary action against Officer Gale on the morning of December 1, 2008. No investigation or action was ever taken against Lt. Shuck.

17. On November 30, 2008 Officer Gale was hired to work overtime and he was given an option whether he wanted to do a prisoner watch at the Hospital away from Plaintiff or work for Plaintiff on the westside and he chose to work for plaintiff.

18. On November 30, 2008 at approximately 0345 hours Plaintiff contacted all the officers under his command to meet with them individually to collect and check their paperwork including Officer Gale. This is common where supervisors meet with their officers on the road to collect their paperwork and signed it.

19. Lt. Shuck heard Plaintiff calling Officer Gale over the radio transmission and called Officer Gale to meet him in patrol underminding plaintiff authority and then sent Officer Gale home to keep us apart and never bother to tell plaintiff of his decision to sent Officer Gale home. Plaintiff was informed by the dispatcher that Officer Gale was sent home when Plaintiff called him several times on the radio.

20. On December 1, 2008 after row call was completed Plaintiff requested a report from Officer Gale to explain why he never met with Plaintiff when he called him the night before and what he did with his paperwork that was never turned in as required by the Bridgeport Police Policy and Procedures.

21.     Officer Gale stated that he never heard Plaintiff calling to meet with him.  Officer Gale appeared to be very upset and prior to leaving he confronted Plaintiff in a confrontational manner pointing his fingers in my face telling Plaintiff in a disrespectful manner that in the future not to speak to him but instead contact the Lieutenant and the Lieutenant would then speak to him.

22.     Lt. Shuck who was present at the time witnessed the incident and failed to take the appropriate action against Officer Gale as stated by the Bpt. Police Policy and Procedure when he became very insubordinate towards plaintiff.

23.     Lt. Shuck was in violation of Rules = Any superior officer of the Department who observes any subordinate violating any rule or regulation and fails to take proper corrective action, shall be in violation of these rules.     Supervisor accountability: All supervisory personnel shall be held accountable for the performance of employees under their immediate control.

24.     Officer Gale was instructed to go back on patrol by Lt. Shuck.  Plaintiff asked Lt. Shuck why are we being kept apart from each other and he stated because Capt. Samultulsky told him to because Officer Gale has filed a complaint against Plaintiff.

25.     Plaintiff asked Lt. Shuck that he has not received any notification or seen any memos stating that Plaintiff is to stay away from Officer Gale or about any investigation regarding Plaintiff and Lt. Shuck said, "I'm telling you now and he proceeded to walk away."

26.     On December 12, 2008 Lt. Shuck submitted a report to Capt. Porter, as per Capt. Porter's request explaining the event that transpired between, Plaintiff, Officer Gale and

Lt. Shuck on December 1, 2008. Lt. Shuck writes that because of Officer Gale's emotional state he decided to let him go home two hours on comp time and that he assured him he would not be birectly supervised by Plaintiff.

27. On December 1, 2008 Capt. Porter submitted a report to Lt. Rebecca Garcia the OIC of OIA regarding unfair treatment against plainiff. He further stated that he contacted Chief Gaudett, Capt. Samultusky and they indicated that there was no order that prohibited Plaintiff from supervising Officer Gale.

28. On December 29, 2008 John Gale files a complaint against plaintiff to Chief Joseph Gaudett reminding him about complaints he filed against plaintiff of a Hostile work environment and he goes on to document dates of events on his report

29. On June 25, 2009 John Gale files a complaint against plaintiff to Capt. Baraja thru Lt. Lula stating that while he was sitting in the back room in the day room writing a report the plaintiff walked in and almost brushed against his shoulder and then went behind him glancing at him.

30. On June 25, 2009 Plaintiff was ordered to submit a report to Lt. Lula explaining the allegation made against him by Officer Gale.

31. On November 17, 2009 John Gale has filed a civil action suit against Plaintiff alleging that plaintiff defamed him when he completed his official OIA report on the investigation of the citizen complaint.

32.   On January 8, 2010 John Gale files a complaint to Special Master William Clendenen against plaintiff regarding Discrimination/Harassment/Hostile Working Environment complaint.

33.   On December 29, 2008 Plaintiff filed a complaint report to Special Master William H. Clendenen of a Hostile Work Environment and has also filed a report to Chief Gaudett regarding D/C Honis action as stated below.

34.   On December 29, 2008 Lt. Lula called Officer Gale to ask him if he wanted to work overtime on December 30, 2008 on the A-Shift.   Officer Gale refused to work for Plaintiff so he refused the overtime and was marked down as a refusal in the overtime book.

35.   On December 30, 2008 Deputy Chief James Honis while dress in civilian clothes came to patrol on the A-Shift to make sure that Officer Gale did not lose a turn on the overtime.   Officer Gale was allowed to work.

36.   D/C Honis explained that Lt. Lula should have accommodated Officer Gale by swapping him with another officer and putting him in a different sector away fom Plaintiff.   D/C Honis stated that Officer Gale and Plaintiff are to be kept apart because Officer Gale filed a Hostile Work Environment against Plaintiff.

***37.  On January 9, 2009 Plaintiff submitted a report to Chief Gaudett regarding D/C Honis going out of his way to come to patrol to allow Officer Gale to work overtime. Plaintiff requested a copy of all the complaints that were made against him by Officer Gale. No copy was ever given to Plaintiff.

38.    On February 1, 2009 Plaintiff submitted a report to Capt. Baraja stating that on February 1, 2009 at approximately 2325 hours Plaintiff observed Officer Gale in a police vehicle inside the police parking lot acccelerating the police vehicle engine deliberately and recklessly causing the tires to skid rapidly in the snow in front of Plaintiff and other witnesses.

39.    On February 2, 2009 Officer John Cholakian and Officer R. Agosto were present talking with Plaintiff and witness the incident and both Officers were ordered to submit a report of what they heard and observed.

40.    On February 2, 2009 Lt. Christine Burns conducted the investigation and submitted her report to Capt. Baraja. Officer Gale was not found to be in any violation.

41.    On February 3, 2009 Plaintiff was off duty at home when he received a call from Officer John Cholakian who appeared to sound very nervous. Officer Cholakian stated that he was approached by Officer Gale regarding the incident in the parking lot and he felt very intimidated by Officer Gale's aggressive approached and was affended when Officer Gale asked him, "Am I speaking Chinese."

42.    On February 3, 2009 Plaintiff submitted a report to Chief Gaudett regarding Officer Cholakian's concern regarding Officer Gale. Gaudett received Plaintiff's report and called Plaintiff on his cell phone and the two met in the Chiefs Office.

43.    Plaintiff expressed his concern about Officer Cholakian who was a new officer on the job and wanted to assure that he was not being targeted by Officer Gale or any other officers trying to harass and intimidate him. Chief Gaudett explained to Plaintiff

that Officer Cholakian would need to submit his own report against Officer John Gale and have it forwarded to his office.

44.     On February 12, 2009 Officer Cholakian submitted a report to Sgt. Valentin regarding the incident that occured between him and Officer Gale on the night of February 3, 2009 as stated below.

45.     Plaintiff hand delivered Officer Cholakian's complaint report to Chief Gaudett in person and as of January 2012 I don't believe that Officer Cholakian was ever notified about his complaint and no investigation was ever conducted by the Chief or his staff.

46.     On February 3, 2009 Officer Cholakian stated that he was in the day room in patrol assisting with a report when he was approached by a fellow officer that he didn't know and only later learned that the Officer was Officer Gale who was with several high ranking officers.

47.     Officer Cholakian stated that he was talking to an Officer name Officer Dos Santos when Officer Gale confronted him without introducing himself and said to him, "Do I look reckless to you." Officer Cholakian was puzzled and said to him what do you mean?

48.     Officer Gale stated to him, "Out there in the parking lot, do you think that was reckless?" Officer Cholakian said to him. "I only put down what I saw that night in that report, and I can't make the judgement of whether you were reckless or not."

49.     Officer Gale in a more aggressive tone said, "I'm asking you! Do you think my driving was reckless? You know that many people around here drive like that, and spin

their tires. So do you think that I was reckless?" Officer Cholakian said to him, "I can't answer that, I only put down what I saw."

50. Officer Gale said to him "Am I talking Chinese or something here, I'm asking you from one police officer to another...As a police officer do you think what you saw in the parking lot was reckless?"

51. Officer Cholakian stated, "At this point I began to feel inimidated and taken off guard by this officer's insistent approach. I also felt that unless I gave him some sort of response he was going to continue to harass me about this subject in front of fellow officer's, and superiors."

52. Officer Gale said to him, "I'm asking you do you think what you saw in the parking lot was reckless?" Officer Cholakian stated, "In an attempt to de-escalate the confrontation Plaintiff stated, no. Then he stated, Thank you and walked away towards the hallway.

53. Plaintiff was at the training academy one day speaking with Capt. Porter who was assigned to the training academy at the time and at some point plaintiff ingaged in a conversation with Lt. Blackwell who was also assigned to the Academy. Lt. Blackwell asked plaintiff if we would be interested in being a certified instructor for the academy and Plaintiff said yes. Plaintiff learned that Sergeant John Gale was selected to be a D.U.I instructor for the City of Bridgeport Police academy.

54. Plaintiff checked with Capt. Porter and asked if it would be ok to participate in a D.W.I. for (Driving while impaired) at the academy being tought by Sergeant John Gale a certified instructor for the Bridgeport Police training academy. Capt Porter didn't see

why I couldn't participate since all members are mandated to take the D.W.I course relating to their police assignment.

55.     Prior to going to the academy to participate in the D.W.I class Plaintiff was approached by one of my traffic Officer's Thomas Rowland. Officer Rowland stated that Sgt. John Gale asked him if he could fix a parking ticket that he issued to a friend of his. Officer Rowlands gave me the parking ticket because he didn't want any part of it.

56.     Plaintiff grabbed the infraction ticket from Officer Rowland and proceeded to the academy for the DWI class. After being in the classroom for approximately 20 minutes, we were informed by the academy secretary that Sgt. Gale was running late for the class and it would take approximately 30 minutes for him to arrive. I could not wait because I had a meeting with Capt. Porter so I left a number for Sgt. Gale to call Plaintiff if he had a question or concern regarding the parking ticket.

57.     Upon information and belief Officer Gale made the false report to his superior of harassment against Plaintiff in retaliation for him attempting to question his action regarding the traffic ticket.

58.     Officer Gale apparently became upset about Plaintiff's attendance at the academy claimed that they were not supposed to be around each other. Plaintiff is not aware that there is any mandate prohibiting him taking classes at the police academy just as any other member of the police force.

59.     Capt. Sapiro emailed Capt. Porter ordering plaintiff to submit a report to him explaining the allegation made against him by Sgt. Gale regarding harassment at his

work place. Capt. Porter ordered Plaintiff submit a report to him and he forwarded to Deputy Chief Armeno.

60.    Captain Porter emailed Capt Sapiro who is in charge of the Bridgeport Police training academy asking him, since he has not heard that there was any prohibition against Sgt. Valentin attending any training class will there be an issue to let plaintiff attend the academy for the D.W.I class knowing that Sgt. Gale was and instructor at the academy teaching the D.W.I class.

61.    Plaintiff then attended the DWI class at a later time with Sgt. Gale as the instructor without any incident.

62.    Plaintiff was notified by Capt. Porter who said that he was notified by Deputy Chief Anthony Armeno via telephone telling him that he spoke with Assistant City Attorney Betsy Edwards who requested officers to assist with traffic duties which involved a fatal accident reconstruction that occurred on Congress St. and Water St. involving a city fire truck that struck a citizen's vehicle. Deputy Chief Armeno told Capt. Porter that the Plaintiff is not to participate, a request made by Assistant Attorney Betsy Edwards to Chief Armeno because of the fact that he had a lawsuit pending against the city.

62.    At the time Plaintiff had a matter pending before then Special Master Clendenen alleging discrimination against him by the Bridgeport Police Department. Plaintiff had also made a complaint to the city because of the John Gale's matter.

63.     Sgt. John Gale had emailed Capt. Porter or Lt. Merena requesting the assistance of traffic officers for a specific traffic detail, but specifically stated that he did not want Plaintiff participating. Capt. Porter brought this to my attention.

64.     In addition to permitting Officer Gale to make unfounded complaints against Plaintiff, the Department has also failed to protect him or seriously investigate multiple complaints made to them by him regarding fellow Officer Thomas Lattanzio.

65.     It appears that Sgt. Gale has been rewarded by the Bridgeport Police Department by allowing him to become a Sergeant, a D.U.I Instructor for the Bridgeport Police Academy and was selected to the E.S.U (Emergency Service Unit) a Prestigest unit which requires 3 phase, Agility, firearms and oral interview which consist of high standard of ethical value and Integrity.

66.     While assigned to the midnight shift as Officer Lattanzio's supervisor on two occasions Plaintiff informally spoke to Officer Lattanzio regarding the manner in which he had handled citizens in the course of performing his traffic division duties. Plaintiff had received multiple complaints from other police officers under his command that Officer Lattanzio would make traffic stop and would pat the individual and then search the vehicle before notifying dispatch of his stop and then he would call for backup. His action is an officer safety issue violating the Bridgeport Police policy and procedures as well as violating people's civil rights.

67.     Moreover, Plaintiff's observation is that Officer Lattanzio would use traffic stops as a pretext to engage in searches of the vehicles of Latino and Black citizens in a manner that he believed violated people's civil rights. Plaintiff had been informed by

other officers that Officer Lattanzio pulls people over for no reason (these are usually Black and Latino citizens).

68.     There have been numerous complaint made against Officer Lattanzio both internally and externally, by citizens and officers alike.   He has a long list of citizen's complaint made against him that the Department is aware off.    Plaintiff had tried talking to him but he was not getting it.     Plaintiff tried to speak with him in a way so as to help him not get in trouble

69.     Plaintiff informed him after the second time that the next time he would start documenting our conversation and there would be progressive discipline.    Lattanzio then got offended and he wrote letter to Capt Baraja saying that Plaintiff was harassing him.  Baraja has stated to Plaintiff that he did not work for Internal Affairs any more and that he needed to change his managerial style.    Capt. Baraja stated that many other officers had made complaint against Plaintiff; however he would not provide any names.

70.     Plaintiff first incountered Officer Lattanzio performance when he was a new office on the job. I asked him to detain a person of interest in the back seat of his police cruiser for further investigation regarding a burglary. Officer Lattanzio physically grabbed the individual who happened to be a black male and for no reason treated the individual very aggresivley slamming him against the back of the patrol car and kicking his leg apart while yelling at him to shut his fucking mouth.

71.     The individual was only a person of interest and not the suspect.    Plaintiff immediately intervened because his behavior was unacceptable.  He immediately took control of the individual and placed him in the back seat of my police vehicle.  Plaintiff

was a supervisor on the midnight shift at the time, he took Lattanzio aside and told him that this type of behavior is unacceptable and warned him that next time this happens he would be written up. Plaintiff had gotten at least two complaints from others about him.

72. Upon information and belief Officer Lattanzio held some animosity toward Plaintiff because when he was in Internal Affairs Plaintiff had been assigned to investigate two complaints against him.

73. In one complaint a girl had alleged that when Officer Lattanzio pulled her over on a motor vehicle stop, be stated to her that if she gave him a blow job he would let her go. Because there was no support for the woman's claim Plaintiff did not sustain her claim.

74 Plaintiff investigated a second complaint in internal affairs involving Lattanzio which was a domestic dispute from the same woman who made the first claim. The dispute was between her and her girlfriend. She complained that Officer Lattanzio, who responded to the call, was really nasty and rude to her.

75. Officer Lattanzio was very upset that Plaintiff even asked him the questions regarding the specifics of these two complaints. In fact he stated that he felt Plaintiff was being rude to him; just by doing my job to investigate. Because Lattanzio was so resistant, Plaintiff had to have another supervisor order him to come in to review his statement. He came with a union representative.

76.     Officer Lattanzio has continued to make serious and false statement to the department about Plaintiff and yet the department has failed to take any disciplinary action that Plaintiff is made aware of.

77.     On or about June 4, 2010 at Plaintiff's request and the request of Captain Porter, a police cruiser was stationed outside his home overnight because of a threat that had been made to Plaintiff by Officer Lattanzio.

78.     The threat came about after the dismissal of a complaint that was filed against Plaintiff with the Commission on Human Rights & Opportunities (CHRO). Lattanzio had claimed that Plaintiff was harassing him and engaging in monitoring of his work. Lattanzio had attempted to get Plaintiff home telephone number from the supervisor on duty.

79.     The supervisor in question was aware of the history between Officer Lattanzio and Plaintiff and he notified Capt. Baraja or Capt. Evans.

80.     On Friday June 4, 2010 at approximately 2253 hours Capt. Baraja the commander in charge of the patrol division contacted plaintiff on his cell phone while Plaintiff was at home and informed me that Lattanzio claimed that he wanted Plaintiff's telephone number so that he could tell him that "redemption is bliss". However Capt. Baraja felt that it was no big deal and that Plaintiff should not worry. Plaintiff took this comment as a threat of some kind by Officer Lattanzio.

81.     On June 9, 2010 Plaintiff submitted a report to Capt. Porter about the conversation with Capt. Baraja regarding Officer Lattanzio's threat made against Plaintiff

on June 4, 2010 and Capt. Porter ordered a police vehicle parked overnight in front of Plaintiff house for his safety as well a his family.

82    On August 16, 2011 a hearing was held and Officer Lattanzio was disciplined and accepted a written warning for the violation. (P-0875)

83.    Officer Lattanzio has made numerous complaints against Plaintiff alleging threatening, Harassment against him by plaintiff and wanted to stay far away from Plaintiff without any contact, however he wanted plaintiff to call him. This is not someone who appears to be threatened or harassed by Plaintiff.

84.    On January 5, 2010 Plaintiff appeared for a CHRO hearing and the matter was withdrawn by Lattanzio. However, upon information and belief, he must still have held something against Plaintiff because it was learned from plaintiff that an incident occured on March 28, 2010.

85.    On March 28, 2011 Plaintiff submitted a report to A/C Lynn Kerwin through Capt. Porter. On March 28, 2011, Plaintiff went to a local pizza parlor in Bridgeport. His son was with him but remained in the vehicle while he went inside. Plaintiff was off duty at the time. He entered and placed his order and then because it was going to take 10-15 minutes. When Plaintiff returned as he was going inside he saw Officer Lattanzio who was also off duty. Plaintiff said hello to him but he did not speak. Because his pizza was not quite ready Plaintiff had to wait a few minutes.

86.    As Plaintiff was leaving and headed toward his vehicle, he heard Lattanzio calling his name. Lattanzio came very close to Plaintiff in a very aggressive and

threatening manner. He kept his voice low so that it was not obvious to anyone who was not very close to them that he issued a threat to Plaintiff.

87.     Lattanzio then stated to Plaintiff "Swim your Fucking Puerto Rican ass back to Puerto Rico and stay there and then you can go fuck yourself." He pointed his finger at Plaintiff aggressively and threateningly and was very close to his face. He had a very angry facial expression. Plaintiff asked "what did you say?"

88.     Lattanzio repeated himself and then went back into the pizza parlor and Plaintiff followed him in. When Plaintiff went back inside he again asked "what did you say" "did you just threaten me?" Lattanzio ignored Plaintiff.

89.     Even though they were both off duty, it was a violation of department policy for Lattanzio to speak to Plaintiff and threaten him in the manner that he did. Therefore Plaintiff called for a supervisor to come to the pizza parlor.

90.     The Officer who was assigned to investigate this matter was Lt. Fitzgerald. Instead of treating what had just occurred as a serious matter Fitzgerald stated that he would treat this as simply a complaint between two citizens.

91.     When Plaintiff wrote his incident report of the event that took place he made the statement that he was taken aback by lack of seriousness that was being given by Lt. Fitzgerald. Lt. Fitzgerald is upset with Plaintiff. After he mentioned Fitzgerald in the incident report he telephoned me and said that he had "fricking went out of his way to look out for Plaintiff, and that Plaintiff had "thrown him under the bus." He hung the telephone up on Plaintiff. As of this date plaintiff has not been notified of the outcome of the investigation.

92.    On April 18, 2011 Betsy Edwards responded to a report submitted to her by Lt. Garcia the OIC of OIA as to whether the incident described by Plaintiff on March 28, 2011 falls within the scope of Section 2.7.7 is titled "Threats, Intimidation and Harassment."

93.    Lt. Cumminotto from the Detective Bureau called plaintiff and informed him that he was doing the criminal Investigation that took place at the Pizza Restaurant. Plaintiff went to the Detective Bureau to give a recorded statedment and Lt. Cumminotto also came to my house and took a statement from my son. As of the time of this complaint Plaintiff has not received or heard any information regarding the final conclusion of the investigation.

94.    Plaintiff was order to submit a report to D/C Anthony Armeno regarding a false complaint by Officer Lattanzio. On April 30, 2011 Plaintiff was doing an assignment at a place called the Blue Fish, this involved a sports games event. As part of his job to make sure that his officers were there to monitor the event. As Plaintiff drove his police vehicle to the Blue Fish area he traveled on a side street which happens to be the street that Officer Lattanzio lives on. On each of these multiple occasions, Plaintiff has been required to write reports to refute or explain the continued false reports being made by Lattanzio.

95.    Officer Lattanzio made a report to the department that he saw Plaintiff driving in his neighborhood while he was walking his dog. He made the false claim that Plaintiff went by with a cell phone camera taking pictures of him. Plaintiff was not taking any pictures of him. Lattanzio made a written complaint that was assigned to Lieutenant

Merena to investigate. The Lieutenant's report merely concluded that Lattanzio and Plaintiff should stay away from each other. This incident happened approximately one month after the pizza parlor incident.

96.     On another occasion, on or about June 9, 2010 Plaintiff had traveled to see his daughter at a friend's house on Lafayette St. near the apartment building where Officer Lattanzio lives.    Plaintiff's vehicle was parked outside the home of his daughter's friend while he waited for his daughter to come out. Sgt. Stepniewski drove by and observed Plaintiff parked and telephoned in a report to patrol claiming that Plaintiff was in the neighborhood spying on Lattanzio.

97.     On June 9, 2010 Plaintiff was ordered to submit a report to Capt. Porter as a result of this false claim of spying.   Deputy Cief Lynn Kerwin called Captain Roderick Porter, my superior requesting a report from plaintiff.   Plaintiff was off duty having dinner with his family when he received the call from Capt. Porter. No Investigation was ever made

98.     On June 4, 2011 Plaintiff was working overtime at Club Lo doing security along with another officer (Sgt Manuel Cotto who is assigned to the Office of Internal affairs) Lattanzio left his duty post where he was assigned to patrol the area of The University of Bpt. near Seaside Park and he went off post without permission to the area where this club Lo is located on Pine St.  and began to ticket numerous vehicles parked near the club.

99.     Lattanzio used this as an opportunity to come into Plaintiff's then work place as an attempt to harass him.  Officer Lattanzio saw Plaintiff and yet he continued to ticket

the vehicles even though Sgt. Cotto who was also working the detail asked him why he was doing this. Plaintiff called for a supervisor and Spoke with Lt. Mayer while Lattanzio still continued to give out tickets. Ultimately the supervisor made him leave. Officer Lattanzio's action put both the Plaintiff and Sgt. Cotto in a bad situation as the crowd was gathering creating a riot like situation if Officer Lattanzio continued with the tickets.

100. Officer Lattanzio told his supervisor Sgt. Melony Prebish that as soon a he saw the Plaintiff he immediately left the area without issuing anymore tickets. Sgt. Cotto of Internal Affairs told Sgt. Prebish that Officer Lattanzio continued to issue parking tickets even after he saw Plaintiff because he witness it and if they didn't write him up that he will. Plaintiff was informed by Lt. Mayer and Sgt. Manar that there would be and an investigation of this matter and that Officer Lattanzio might be disciplined for being off post.

101. As of 2012 Plaintiff no investigation was ever done. No one has contacted Plaintiff to get a report or statement from him.

102. Officer Lattanzio was not in his assigned post which at that time was the University of Bridgeport area near Seaside. Secondly, Lattanzio had claimed that they should be kept away from each other yet he chose to come into Plaintiff's area in a provocative way.

103. Lt. Mayer the midnight Lt. in charge of the midnight shift requested that all the ticket that Officer Lattanzio issued be collected by Sgt. Manar which he did and was disregarded.

104.   On another occasion on or about June 5, 2011 Lattanzio wrote another complaint against Plaintiff. He falsely claimed that he saw car TS-1 which is the police vehicle that Plaintiff operates and another vehicle being operated by Officer Sekelsky following him around as he drove his personal vehicle so he got nervous and pulled over and went inside a store.

105.   As a result Officer Sekelsky had to go to Internal Affairs to give a statement and it was learned based on the investigation that the two officer involved were Officer Sekelsky and Cotto and Officer Cotto was operating car T1 and not TS1. Both Officers were on a funeral detail in that area and they acknowledge seeing Officer Lattanzio.

106.   On May 16, 2011 Officer Sekelsky was ordered to write a report. He said that on May 16, 2011 he was towing an abandoned vehicle on Gregory St. near where Officer Lattanzio lives and Officer Lattanzio call traffic to speak with Officer Sekelsky and asked him why was he there and Officer Lattanzio complained that Plaintiff was having his traffic officers spy on him.

107.   Sgt. Santiago Llanos investigated a complaint Plaintiff made on December 1, 2008 and January 9, 2009 together as one regarding a Hostile Work Environment. The investigation was completed and forwarded to the Chief's Office.

108.   On October 18, 2009 Capt. Baraja prior to being transfer to a different division submitted a report to Chief Gaudett, D/C Honis, Capt. Porter and Capt. Sapiro stating that due to complaint from Officer Lattanzio and Officer Gale that plainiff is to have very limited contact with these officers.   Capt. Baraja writes if plaintiff is hired to work overtime he should be placed in booking to limit the contact.

109. On 7/7/09 Plainiff submitted a report requesting to be transfer to another division, but did not get transfer until there was an opening. Other Officers like Office Oquendo was transfer by the Chief without being an opening to keep him away from Lt. Karpus.

110. Plaintiff was transfered on January 18, 2010 (Personnel order number P-0660)

111. Officer Lattanzio submitted a report requesting to be change to a different squad away from Plaintiff, which he was transferred to the East Side of town.

112. Plaintiff while assigned to patrol was ordered by Capt. Baraja to investigate a complaint made against Officer Lattanzio.

113. On April 12, 2011 Sgt. Gale was disciplined because he was found to be in violation of the Bpt. Police Dept. Rules. 2 Holidays was imposed. P-0825

114. On December 26, 2009 Plaintiff submitted a report to Special Master Clendenen complaining of a Hostile Work Environment.

115. On July 7, 2009 Plaintiff submitted a report to Chief Gaudett requesting to be transfered out of the midnight shift, that didn't happened until there was an opening on the day shift and I had to put in a bid.

115. On July 7, 2009 Plaintiff submitted a report to Chief Gaudett of a Hostile Work Environment.

116. On August 29, 2008 Plaintiff was transferred from OIA to Domestic Violence Unit and was the supervisor in Charge of two officers, Officer Carnetha Padgett and Officer Juan Serrano.

117.    On November 17, 2008 the Domestic Violence unit was disbanded by the Chief and Plaintiff was tranfer to the midnight shift in patrol along with both officers who were transferred back to Patrol.    Officer C. Padgett and J. Serrano were asked if they wanted to return back to the Domestic Violence unit and they both agreed and on September 25, 2009 both officer were transferred back Domestic Violence Unit.

118.    Plaintiff was never asked if he wanted to return back to the Domestic Violence unit.  This would have been a perfect opportunity to remove Plaintiff from the midnight shift away from the Hostile Work Environment he was experience Officer Lattanzio and Gale, but the Chief never made the transfer and Plaintiff had to remain on the midnight shift until he had an opportunity to bid out.

119.    All the complaints made against plaintiff is a retaliation by Officer Lattanzio and Sgt. Gale due to the fact that Plaintiff was assigned to the Office of Internal Affairs and had Investigated both officers. Further senior members of the Bpt Police Dept. encouraged and condoned this retailiation and harassment against him.

120.    Defendant Police Department has, since on or about October 2013, engaged in a discriminatory and retaliatory action by having an independent third party commence investigation of six year old allegations made against Plaintiff by Officer John Gale.

121.    Defendant Police Department engaged in discriminatory and retaliatory conduct against Plaintiff and in favor of Officer Gale by causing a resolution of litigation against Plaintiff by Gale, without Plaintiff's knowledge or agreement.

122.    Upon information and belief police department administration has treated Plaintiff discriminatorily in response to claims made by Sgt. Gale and Officer Lattanzio.

**COUNT ONE:** **(42 U. S. C. § 1983, Equal Protection under the U. S. Constitution) (As to Defendants Bridgeport Police Department)**

Paragraphs 1 through 122 are hereby incorporated by reference as if fully set forth herein and made paragraphs 1 through 122 of Count One.

123.   Joseph Gaudette, in his capacity as the Chief of the defendant Bridgeport Police Department, is a policy maker for the department and at all times material herein was responsible for the promulgation and enforcement of department policies, practices and customs.

124.   Defendant engaged in a continuous practice, custom and policy of racial and ethnic discrimination against its employees, beginning at least since 2000 and continuing through the present by the following actions:

(a)   Maintaining a practice, custom and policy of engaging in unwarranted and baseless investigations of its minority officers while not engaging in such investigations of its Caucasian officers.

(b)   Maintaining a practice, custom and policy of permitting white officers to engage in conduct that violates Department rules and regulations without discipline while  disciplining non-white officers.

(c)   Maintaining a practice, custom and policy of retaliating against non-white officers who engage in protected activity while not retaliating against white officers.

(d)   Engaging in immediate and serious investigations of complaints made by white officers while simultaneously refusing to investigate complaints made by non-white officers against white officers.

(e) Maintaining a practice, custom and policy of failing to provide protection to minority officers when they have complaints regarding the conduct of non-minority officers.

125. Defendants failed and refused to provide protection to Plaintiff while simultaneously providing such protection to similarly situated police officers who had not engaged in protected conduct as Plaintiff.

126. By failing and refusing to provide protection for Plaintiff, Defendants violated Plaintiff's right under the equal protection clause of the U. S. Constitution to be free from discriminatory treatment.

127. Plaintiff has been damaged thereby.

**COUNT TWO:** **(42 U. S. C. § 1983, 42 U. S. C. § 1981; Race Discrimination) (As to Defendants Bridgeport Police Department)**

Paragraphs 1 through 122 of Count One are hereby incorporated by reference as if fully set forth herein and made paragraphs 1 through 122 of Count Two.

123. Joseph Gaudette, in his capacity as the Chief of the defendant Bridgeport Police Department, is a policy maker for the department and at all times material herein was responsible for the promulgation and enforcement of department policies, practices and customs.

124. Defendant engaged in a continuous practice, custom and policy of racial and ethnic discrimination against its employees, beginning at least since 2000 and continuing through the present by the following actions:

(a)    Maintaining a practice, custom and policy of engaging in unwarranted and baseless investigations of its minority officers while not engaging in such investigations of its Caucasian officers.

(b)    Maintaining a practice, custom and policy of permitting white officers to engage in conduct that violates Department rules and regulations without discipline while   disciplining non-white officers.

(c)    Maintaining a practice, custom and policy of retaliating against non-white officers who engage in protected activity while not retaliating against white officers.

(d)    Engaging in immediate and serious investigations of complaints made by white officers while simultaneously refusing to investigate complaints made by non-white officers against white officers.

(e)    Maintaining a practice, custom and policy of failing to provide protection to minority officers when they have complaints regarding the conduct of non-minority officers.

125.   Plaintiff has been damaged thereby.


**COUNT THREE:**    **(Negligent Retention) ((As to Defendants Bridgeport Police Department, Deputy Chief James Honis)**

Paragraphs 1 through 122 of Count One are hereby incorporated by reference as if fully set forth herein and made paragraphs 1 through 122 of Count Three.

123.   Defendants retained Officers Gale and Lattanzio in the employment of the Bridgeport Police Department when they knew or should have known that they posed a serious threat to the personal safety of others such as Plaintiff.

124.   Defendants negligently retained in its employment Defendant Gale and Lattanzio when they knew or should have known that Gale and Lattanzio posed a significant risk of injury to officers within Defendant police department.

125.   The injury to Plaintiff was proximately caused by Defendant's negligent retention of Gale and Lattanzio in its employment.

126.   The Plaintiff was damaged thereby.

**COUNT FOUR:**    **(Negligent Infliction of Emotional Distress) (As to Defendants Gale and Lattanzio)**

Paragraphs 1 through 122 of Count One are hereby incorporated by reference and made paragraphs 1 through 122 of Count Four.

123. By the conduct alleged, Defendants Gale and Lattanzio caused the negligent infliction of emotional distress to Plaintiff.

124.   Defendants Gale and Lattanzio knew or should have known that their conduct would cause severe emotional distress to Plaintiff.

125.   The conduct as alleged by Gale and Lattanzio was the proximate cause of Plaintiff's emotional distress.

126.   Plaintiff was damaged thereby.

**WHEREFORE**, Plaintiff prays that the Court grant such relief as may be deemed appropriate, including but not limited to:

    (a) Compensatory damages;

    (b) Attorney's fees and costs

    (c) Such other equitable remedies as the court deems proper.

### JURY DEMAND

Plaintiff hereby demands a jury trial on all issues.

          THE PLAINTIFF
          GILBERTO VALENTIN SR.
          BY____*/s/Josephine S. Miller*_____
          Josephine Smalls Miller, CT Bar # 422896
          914 Main Street, Suite 206
          East Hartford, CT   06108
          Tel: (203) 512-2795
          Fax:  (806) 289-8944

RETURN DATE:    DECEMBER 10, 2013

GILBERTO VALENTIN                           SUPERIOR COURT

v.                                          J.D. OF FAIRFIELD

                                            AT BRIDGEPORT

BRIDGEPORT POLICE DEPARTMENT,
JOHN GALE, THOMAS LATTANZIO,
JAMES HONIS, (Deputy Chief),
JOSEPH GAUDETTE (Chief)                     NOVEMBER 11, 2013

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand is in excess of $15,000,

exclusive of interest and costs.

FOR THE PLAINTIFF

By:    */s/Josephine S. Miller*
Josephine Smalls Miller, ct Bar # 422896
914 Main Street, Suite 206
East Hartford, CT   06108
Tel: (203) 730-9184
Fax:  (860) 289-8944
Email: jmillerlaw@sbcglobal.net